As Director of the Appellate Litigation Clinic at the University of Virginia School of Law, I'd like to introduce to the Court this morning two third-year students, Emily Mordecai and Joshua Kengde, who satisfy the requirements for practice before this Court and who have our client's consent to argue his appeal this morning. Very well. Welcome, Hoos. All right. You may be seated. Good morning, Your Honors, and may it please the Court. The rough ride officers Diming and Cooper gave Paul Thompson is a cruel and unusual form of punishment. This basic principle is clear to any reasonable officer. Where there are tribal issues of fact as to the extent of this rough ride, the granting of qualified immunity at summary judgment is improper. The District Court granted qualified immunity after... What do you mean by tribal issues of fact as to the extent of the rough ride? On the record below, the facts are very much in dispute in this case. But we accept the facts as pled by your client? Yes, that's exactly right. But the main error the District Court made is that it did not take into consideration the full set of facts offered by Paul Thompson. So, we ask this Court to correct that error as well. The exact issue is that the District Court didn't take the facts Paul Thompson offered in the light most... Which facts did he reject? The Court didn't explicitly reject facts, but they did not consider the full factual context. And an example of this is the Court seemed to consider the facts in a piecemeal fashion. For instance, the Court noted that the officers taunted Paul Thompson and then continued to say that taunting is an Eighth Amendment violation on its own. Paul Thompson wasn't showing those instances of taunting to show that those are some sort of Eighth Amendment violation on their own, but instead to show the requisite mens rea and knowledge that the officers had during the ride. As I understand it, not only taunting him, but suggesting that the purpose of the rough ride was to teach him a lesson, right, because he'd been nothing but trouble in prison. That's exactly right. Some of the particular instances and phrases included in the taunting were, we know just how to deal with prisoners like you who file extensive grievances like this, and we're going to teach you a lesson, in effect. That's exactly right. In addition, there are also facts on the record that the District Court did not fully take into account that show not only the heightened level of mens rea of a deliberate act with the very purpose of causing him harm, but also relevant to an Eighth Amendment analysis, actual knowledge that the officers had. Didn't the District Court essentially just say that those rights were not clearly established? Yes, that's right. That's the main error that the District Court made. Well, even if you, I mean, maybe we could deal with the other ones, but that's the main thing. If it was not clearly established, then it was a right because he assumed up front that it could be. First of all, he said there's enough to dispute whether or not it is or not. This is assumed. It's not clearly established. So isn't that really the issue because the Supreme Court says, we can do that. I mean, courts can do that. You don't even have to look to see if it's a violation. You just see if it's clearly established in order to determine whether or not immunity should be granted here. The court here says, well, all that's happened here and the facts as developed show this was not something clearly established. It's not. And to that point, in determining clearly established, is there any Supreme Court case or Fourth Circuit case that holds such? Yes, that's right. There are a number of Supreme Court cases that apply with obvious clarity to the situation that the District Court did not take into account. And is that the basis you've got to rely on, obvious clarity as opposed to saying a case has held this? Yes, that's exactly right. There are no cases either from the United States Supreme Court or this court or the highest court of Virginia that are factually on point with this case. In that regard, this case is very similar to Amici against West decided by this court. There, the defendant police officer subjected a plaintiff to a sexually intrusive search upon an arrest for a violation of a noise ordinance. And in that case, the defendant asked for qualified immunity on the same grounds given by the District Court in this case below, namely that there was no factually on point precedent explicitly prohibiting his actions. But what this court found in Amici against West was that his actions were so obviously violative of the basic principles of the Fourth Amendment that have been announced in previous cases, that he was in fact not entitled to qualified immunity. And that is the same exact situation we have here. Obviously, in this case, it's an Eighth Amendment circumstance, but there are a number of Eighth Amendment cases that apply with obvious clarity to this case. One is Hudson against McMillan decided by the United States Supreme Court. There, the Supreme Court held that actions taken maliciously and sadistically with the very purpose of causing harm, rather than in an effort to maintain or restore discipline, violate the Eighth Amendment. And that very obviously and clearly maps onto the exact situation we have here. Let me make sure we understand we're talking the same thing. Are we talking clearly established under the deliberate indifference framework? Or are we talking about it in that context as well as excessive force? Because it looks to me as though you could have waived the excessive force claim. So what is the context of your argument? Deliberate indifference or excessive force or both? Well, both, Your Honor. This fact pattern has features of both. I'm not aware of any rule from the United States Supreme Court that says these two heuristics that courts have used to describe Eighth Amendment claims, either excessive force or deliberate indifference, are exclusive and that one is waived if the other is not mentioned. The reason why this case is— I think if you simply mention deliberate indifference, that on its face will include an excessive force claim? No, Your Honor, that's not our position. The facts here include— Well, you didn't mention it in your opening brief, excessive force. Right. Deliberate indifference is the name of the claim that we have used in both our briefs. The district court also referred to it in those terms as well. I understand that, but you didn't refer to excessive force. And these are cases that really look a lot like excessive force cases. That's right. And the reason why this looks so much like an excessive force case is because typically in deliberate indifference cases, there's only sort of a criminal reckless state of mind that's required. Here we do have a malicious and sadistic state of mind taking the facts in the light most favorable to Paul Thompson. Well, it's something additional. Excessive force would be different had you properly presented—or if it is properly presented, I'm not saying it's not—and maybe wouldn't require what would be required in deliberate indifference. That's right. And the reason why this case is a hybrid case of sorts is because in the deliberate indifference context, because that mental state of the officers is lower, relatively speaking, the injury threshold is much higher. But what we have in this case is both a high injury or risk of injury threshold paired with a high mens rea. It's almost an extra credit on a deliberate indifference claim, in other words, because we have shown not only that the officers had actual knowledge of the risk being served by Paul Thompson, but they also set out with that exact intent in mind, which is why the Hudson framework is relevant to the analysis of whether these actions are clearly established under law or not. So the government's brief points out that the defendant's alleged intent in committing these acts is not at all relevant in deciding the question of qualified immunity. They cite the Harlow and cases subsequent to Harlow. Frankly, I'm scratching my head trying to figure out how motive can't be relevant to a case like this. But maybe you can explain that. Yes, Your Honor. I believe the government was citing from the Crawford L against Britain case. And there is a sentence which the Commonwealth pulled which says that intent isn't relevant to a qualified immunity defense. But just one paragraph later in Crawford L against Britain, the court clarifies that, of course, when an intent is necessary to show a constitutional violation, that question of intent is always relevant. And the reason for that is Saussure against Katz. But that only gets you to the first prong of the qualified immunity test. That is a constitutional violation. But then you have to assess whether or not the officer is entitled to qualified immunity. And in that context, it sounds like intent and motive go out the window. Or do they? They do go out the window if you're looking only at the second prong of the qualified immunity question of whether the right was clearly established. But as far as the government presents it, it seems that they seem to say intent is never relevant at all to a qualified immunity analysis. But of course, one of the first questions asked in a qualified immunity case is whether a constitutional violation has, in fact, occurred. So absent intent and malice, looking at the second prong of qualified immunity, what makes this a violation, a clearly established violation? Farmer against Brennan from the United States Supreme Court sets this as a clearly established violation. Even if, assuming for a moment, that all Paul Thompson could show was actual knowledge of risk that the officers disregarded, Farmer against Brennan clearly maps onto the situation. Farmer, of course, sets the deliberate indifference rule that officers cannot be aware of a risk to a prisoner and deliberately disregard that risk. And yet, that's the exact situation we have here. On top of the other facts showing malicious and sadistic intent, even if one were, for some reason, to completely wipe those away, the rest of the facts we have that show this deliberate indifference are the fact that Paul Thompson, as he stated in his affidavit, was in the back of the prison van within sight of Officer Dyming, and Officer Dyming could see Paul Thompson physically being thrown around from side to side in the back of the van. Additionally, we have Paul Thompson asking both Officers Cooper and Dyming to please slow down and telling them that his head was being banged up against the wall. And there, the officers disregarded that as well. And Farmer against Brennan is the clear reference point for this that shows that those actions are clearly prohibited by the Constitution. And importantly, this case can also be distinguished from Vinson, which is the main case relied on by the District Court as well as the Commonwealth in their brief. Farmer against Brennan is the key reference point here, and Farmer against Brennan shows that when there's an issue of fact that the defendant has acted with deliberate indifference, that is a violation of the Constitution, of the Eighth Amendment. And in every other case, including in Vinson, we have the District Court findings that the officers acted with mere negligence. Of course, negligence is not actionable under the Eighth Amendment. The only cases cited in either the District Court opinion or in the Commonwealth's brief indicating a sort of reckless state of mind of the officers, or even one step above to malicious and sadistic intent, is the Morgan cases, Brown cases, excuse me, out of the Eighth Circuit. And in those cases, we have officers looking back and asking prisoners if they're scared and smiling, saying that they are scared. And there, the courts find that that is, in fact, an Eighth Amendment violation to which officers are not entitled to qualified immunity. And finally, returning back to the point of intent, the intent that's necessary to show a constitutional violation is, of course, always relevant. But it's a very narrow question of intent that we're asking in this case. We're simply asking what knowledge the officers had as they were driving the van. In the briefs and in the progeny of cases you mentioned, Judge Diaz coming from Harlow and the cases going forward, it's clear that before Harlow, in Wood against Strickland, the standard there was whether there was any sort of malice or anything the defendant might have had against a plaintiff. And that itself would have been enough to defeat qualified immunity. Here, in those cases, of course, could open up the discovery and trials to, you know, if somebody made a weird comment to somebody else 20 years prior, that would be relevant under the pre-Harlow standard. But what Harlow did is it narrowed these questions of intent to only the questions of intent surrounding that specific action. So the only questions of intent we have here are what did the officers know as they were driving Paul Thompson in the van? And did they disregard that risk or not? Which is, of course, relevant to a qualified immunity question. And it's also clear that the Commonwealth has argued that the heart of Paul Thompson's case is the fact that this whole ride was a ruse and that the hearing he had in Mecklenburg was made up and there was no point of the ride. We would like to point out that even if that were the case, the ruse is, in fact, no such point. It's not a central part of our claim at all. The fact of a rough ride occurring, an intentionally rough ride occurring, is just as plausible regardless of whether this hearing is canceled or not. Even if the hearing was on, the officers on their way back from a hearing could have opportunistically decided that they're going to subject Paul Thompson to a rough ride. And then under those facts, you still have a very clearly established Eighth Amendment violation. So, let me posit a different scenario. They fail to buckle in your client and then begin to drive the van recklessly. But as soon as they notice him being jostled around the back of the van, they stop and they take corrective action. That's not this case, right? Right, that's not this case. But is that a case of deliberate indifference? Again, the reference point is Farmer against Brennan. So, I'm not sure if when you use the word recklessly in your hypothetical there, if you meant recklessly just in a vague sense of the word reckless driving. They're speeding, they're taking curves deliberately at a high rate of speed. But as soon as they notice that something has happened to the prisoner in the back, they stop. I'm trying to understand your position. If we're not going to consider the motive and intent with respect to the statements that they made that they did this intentionally in order to teach him a lesson that we need to look objectively at the facts as they occurred. And you're saying that even as the ride progressed, they saw him being jostled around the back of the van and did nothing. And that's what makes this case different. That's right. I see that my time has expired. If I may have leave to answer the question. So, I first just wanted to clarify importantly that the malicious and sadistic actions on the part of the officers, the taunting and all of those sorts of things are very much relevant to our claim and they are a part of our claim. And as you mentioned, Judge Diaz, at this summary judgment vantage point, we have to take the facts in the light most favorable to Paul Thompson. The simple point I was making about the deliberate indifference and the actual knowledge on the part of the officers is that even considering only those things, we still have a claim under the Eighth Amendment. To return to your hypothetical, if the officers were driving in a reckless manner and speeding back and forth and crossing the yellow lines and things like that, as soon as their actual knowledge of the harm and risk of harm becomes apparent, that's when the Eighth Amendment clock starts running, so to speak. I'm confused. I thought you said, and I think this is a summary judgment case in which the evidence is viewed in the light most favorable to the non-moving party, you're the claimant. Is that evidence that you are now telling me in the light most favorable? No, the evidence in the light most favorable is... Well, just help me. Why are you discussing that? The evidence in the light most... What could have happened or what other side of the evidence shows and all that, if the evidence in the light most favorable as I understand it, he's saying they knew that they didn't have to take him to this jail. They did it on purpose. They got him up there. They admonished him and told him, we're going to teach you a lesson. They wouldn't buckle him in. Bounced him all over. Got him hurt. He says they basically lied. Says, I bounced my head up on a wall. Do we look at something else? No. On summary judgment, you do not. The Commonwealth has raised the rule on summary judgment that allegations that have been blatantly contradicted by the record need not be considered. It's our position that there's no blatant contradictions in this case. I see. The only point about the ruse is that even if you were to not consider those facts about the whole thing being a ruse because we do have a log here in the joint appendix, then you still have a claim under the 8th Amendment. All right. Thank you, Counsel. Mr. Cox. Thank you, Your Honors. May it please the Court, Trevor Cox from the Office of the Attorney General on behalf of the Defendant, Appelese. We do not quarrel with the idea that prison inmates are protected by the 8th Amendment, protected from cruel and unusual punishment. But what we submit is that in this case, the District Court properly granted qualified immunity because Thompson couldn't satisfy either prong of the qualified immunity analysis. I thought the District Court assumed the first one. Assuming it was the 8th Amendment and violence. And he found those disputed facts. But assumed it. And he decided on the second prong, which is clearly established. That's correct, Your Honor. If you look at the facts, what facts do we look at? Aside from the fact that we know that it seems like the other side has at least conceded or at least acknowledged there's no Supreme Court case or Fourth Circuit case directly on point. So now we're under the obvious prong. At least the determination of whether or not this is clearly established. Yes, Your Honor. Why is it not obvious to an officer if what he's saying is true? I'm not saying it's true, but they put me in this van and they told me they were going to teach me a lesson. They banged me all over this place. Why is it not obvious to anybody that that's a violation of the Constitution? What we have to accept as true, Your Honor, is the allegation that he was not buckled into his seat. He was shackled, but in his seat. And that the driver was traveling faster than the speed limit. We don't know how Thompson would know that. We don't know whether it was 26 in a 25 or 80 in a 25. The alleged allegation is that Cooper crossed over the yellow line. We don't know how quickly, how many times, whether it was from one side of the road to the other. Do we accept as true what he said they told him? The taunts, Your Honor? Yes. You file a brief, we're going to teach you a lesson? Yes. And we didn't contest on the first prong about whether it was a deliberate indifference claim. We don't dispute that that would go to the second prong of the deliberate indifference analysis. What we do contest is the district court's conclusion, and this court can affirm on any ground evident in the record, the district court's conclusion that on the first prong of the deliberate indifference analysis whether there was a serious risk of significant harm, excuse me, a substantial risk of serious harm that was evident here. There's no serious harm. Yes. You're in the back of a vehicle and someone is taking hard curves and you're bouncing your head against side to side, do you think that's not a serious risk of harm? On the allegations presented here, all we know is that they were going faster than the speed limit. We don't know if it was one mile per hour or 80 miles per hour. You've got to take it all, counsel. These curves that are alleged were part of the road. He acknowledges they were traveling on winding roads. Curves are always part of the road. What does that have to do with it? You couldn't take them hard if they weren't there. They're taking the curves and saying, this is what you get for doing this. And then look back and say, yeah, it's working too. That's what we have to take, counsel. You mean to tell me it's not clearly established that you can't do that? That goes on to the first point, the substantial risk of serious harm. We don't know whether it was this or whether it was crossing over the line like this. Is there a reasonable inference to be drawn that it was this and that and he was bouncing around? Why is it not a reasonable inference to take? We don't have to assume the worst case scenario. It's not the worst case. What do you think is the scenario where you're back there, you're unbuckled and someone is taking hard curves at excessive speed and he says, I'm bouncing around. What's the far reach for inference to be drawn? The concern, Your Honor, is that an inmate could make the allegation that yes, I was unbuckled. Yes, the driver was going, say, one mile over the speed limit. The concern is that that's automatically a deliberate indifference claim and therefore, because the argument is qualified immunity, it doesn't... If that's the automatic, you've got to put in that they deliberately said their intent was to do this, to harm him. Yes, assuming that as well. If you get sued for that, then you should be. Because what you're saying is that if I get sued just because someone said I was unbuckled, they went one mile over the speed limit, now I'm going to sue you. That's not this case. He said, yes, I'm going fast because I want to hurt you, because this is what happens to you. You've got to take the case. I accept the allegations that the taunts were made. You're taking the chicken little response. Whoa, if we accept it here, then the whole world is going to fall. All the person has to say is I'm unbuckled at one speed. That's a fallacy of false delimity. What I merely mean to repeat for the court is that only extreme deprivations are prohibited under the 8th Amendment. It is extreme. You heard of the Freddie Gray case in Baltimore? Your Honor, that's a very different case, I think. What's the difference? They didn't say they were doing it deliberately. Freddie Gray died from a spinal injury. He was placed face down on the floor of a van with his hands shackled behind his back. The whole point, counsel, is transporting someone can be a deadly thing. I'm not saying point by point. How would you like to be behind a van or be in a place being bounced around? People have serious injuries when there's no contact, just their neck going forward without hitting an instrument. Are you going to make the case to the court that that's not a risk of a serious injury? What I'm submitting to the court is that there is not a proper comparison between somebody who's put face down, hands shackled behind their back. You won the Freddie Gray analogy. This one is okay. That goes to how you define the right. I'll move on to the clearly established part because I take it the court doesn't agree with me. It is clearly established that when you define the right at issue as defined as it is here, it was clearly established to Mr. Cooper, the driver, that with the inmate unbuckled but seated in the back seat, it was clearly established that he could not go one mile over the speed limit or he could not cross over the yellow line. Where did that one mile come from? Your Honor, we don't know how fast over the speed limit he was and so what I'm suggesting is You didn't know in the Brown case either. You had the Brown case as excessive speed. All the plaintiffs said and the court says that's enough. Was it not in the Brown case? Brown v. Fortune. Yes. There was one case. Maybe it was Brown. Maybe it was another that was cited by... I don't want to take you off on that but you got on the one speed, the one mile. I'm just saying the testimony of you got a lot more than he's driving excessive speed here. What you have here in addition to some statement by the defendant that there's intent. There's intent to do it. He's established that. He's telling them why they're doing it and the motive is all there. He doesn't just say he's speeding too much. He says he's crossing over the line. You can see that. Eighth Circuit case and the Fortnite case says he's speeding too fast. You're too close to be able to cross over the line here. And as a result the court found that was sufficient. That's right. But you have even more in this case here. What I'll say, Your Honor, is that the allegations about taunting that goes to the deliberate indifference. The second prong of deliberate indifference and we didn't dispute that. We didn't try to argue that that didn't show deliberate indifference. We contested whether there was substantial risk of serious harm. And then we said on qualified immunity when you're establishing the right you don't look to the intent to establish what the clearly established right is under Harlow. But we don't need to consider the extent of the plaintiff's injuries to establish that he was harmed in a case of this type. Well, in a deliberate indifference case you do. I think there's some colloquy about whether this is an excessive force case. That was not something that was pled. It was pled as a deliberate indifference case. That's how it was treated by the district court. That's how it was treated on the opening brief. They say this is the definition of deliberate indifference. It's only after we suggested that their analogies raised in the opening brief sounded in excessive force that we've heard it on reply and then here today. So, in excessive force, yes, any injury is sufficient. But it's different in the deliberate indifference context. And this court, I think, made that clear in Dance Service Stansbury where it said we don't take the Wilkins decision in 2010 to say that there's no serious harm requirement in the court. Where you don't have an actual injury. But because there's a substantial risk of serious injury, then that's enough. That was a case from this court in February of this year. I have tried to argue as best I can that the allegations as presented don't make out a substantial risk of serious harm. I continue to believe that that's the case. But in the interest of moving on... You put a child in the back of the seat of a car without a child's seat, they're not buckled. And you're driving hard, cursive, excessive. Do you think that's the risk of injury to the child? It would be with the child. Presumably their feet aren't touching the floor and they don't have the person is 17 years old. They're unbuckled in the back seat. And you're taking hard curves, excessive speed. Do you think that's a risk of serious injury? It depends on the context. We don't know here what actually happened, how hard the curves were, whether it was really excessive speed or whether it was one mile per hour. It's a factual dispute, isn't it? Well, it would be if there were facts to actually dispute. But here, he has not alleged the facts that would enable us to have a dispute. Other than you were taking hard curves, he was bouncing all around. He had the opportunity for discovery to find out what route they took, what roads they were on, what the speed limits were, how fast they were going. Why does it matter what the route was? I could take you down Main Street as straight as it can be and I could go from side to side and it would be just a bumper rise if it was a curvy road. That's a suspicious argument there. I think it goes to whether the alleged curves were actually part of the route and he was traveling between the lines when he took those curves. So I think it goes to that point. You know one thing, they wanted to hurt him. They wanted to hurt him. Is that right? Don't you have to concede they wanted to hurt him while he was in a moving vehicle unsecured? Is that correct? Don't you have to accept that? Yes or no, counsel, don't you have to accept those facts that they wanted to hurt him while transporting him unsecured in a vehicle? Yes or no? Yes, but. They didn't know that it was going to hurt him so much as scare him perhaps. Excuse me, counsel. He said he looked around and they saw him bouncing around. Don't you have to accept that too? Don't you have to accept that not only did they want to hurt him in a car while he was being transported at excessive speed unsecured and they looked around to make sure they were accomplishing their intent to hurt him. Don't you have to accept that? Yes or no, counsel? Tell me why it's not a serious risk of harm. The but is that I don't know if there's allegations that they saw him getting hurt and said that's what we intended to happen. They told him that before they saw him. They told him their intent before they looked around. The look around was just to confirm that their attempt was being accomplished. Whether it was to harm him or scare him. I mean, you're trying your best to represent your client but it's really it defies logic and reason and any sense of justice but you're going to make your argument but you have to concede all those things here. I concede that the taunts were made. I don't know that it's clear that they were taunting him to say this is what we do meaning we're going to hurt you as opposed to scaring him. I don't know, but I accept the taunts. Let me at least try to figure out where we are in terms of the posture of this case. The district court held that there were disputed issues of fact insofar as the 8th Amendment violation. Then he went on to assume that even if it is it's not clearly established. We've maybe dealt with it clearly established but let's take the posture that if we agree we decide no, this is apparent and obvious that intentional infliction of pain or unnecessary infliction of pain is clear to establish you can't do that. If it goes back does that mean you can't still prove qualified immunity at the trial? In other words, couldn't those issues be submitted to the jury to determine if the 8th Amendment violation occurred? If you're going to trial then qualified immunity is already an empty promise. You're at trial and that's what qualified immunity is supposed to do. Who determines the disputed issues of fact? Oh sure, the court does, yes. So will it be a bench trial determination of the disputed issues of fact for purposes of qualified immunity for the 8th Amendment or can you submit those to the jury? Your Honor, I think you could probably submit those to a jury. I'm not a trial lawyer. You're arguing back and forth on these facts and you're saying, well, the trial judge I guess you're saying he erred by not finding that it wasn't an 8th Amendment violation. He says it's a disputed issue of fact and it looks to me this record clearly has enough evidence to say it's disputed. Now who decides the dispute? We'll deal with that at trial. So that issue may still be out there. So that leads us to what he then assumed. Assuming there's a violation now we're only talking about clearly established. And if we go there I think you have to represent that the unnecessary infliction of pain is not clearly established as being a violation of the Constitution if officers do it. I don't think case law holds that. Does it? If you unnecessarily inflict pain on an inmate isn't it clearly established or at least to the point that it's apparent and obvious that you cannot do that? I think, Your Honor, if you take the intent part out of it and you're just looking at what happened. Unnecessarily inflict. Unnecessarily inflict. Recklessly. He says he's recklessly driving him. That much is in the record. He says he's recklessly driving him. He's driving on his potholes. He's swerving the car. He's driving at excessive speed. He's going all across the line. Turning these curves. He's not buckled him. By all you're required to be buckled. He says, I asked to be buckled. And we don't dispute that at all. He asked to be buckled. He says he's driving recklessly. Throwing him all over the place. And apparently it continues for some time because he's got a gash in the head. He's banging all up. And then he says, they said, reports back that I was banging my head against the wall. It's disputed what happened but we assume for the purposes of this. That's exactly the word I wanted there. To get back to the 8th Amendment side. That's correct. And it sounds like I didn't get any traction on the argument about substantial risk of serious harm. Because you just said it's disputed. That's probably why you didn't get much traction on it. But I'm getting back to the clearly established problem. At the very least that evidence shows some infliction of pain. Whether it came intentional. Which the evidence, if you look at the White House paper, looks like it's intentional. Because that's what he said. They are doing it to him intentionally. But it certainly is unnecessary. Because he could have been buckled up. He could have been buckled up. You didn't buckle me up. That sounds like an excessive force claim. They didn't bring it. They could have. But they didn't. Deliberate indifference is a higher standard in terms of showing an infliction of pain. It shows you'd have to show the intent and the inference was actually drawn. I take it the Court is not going to go with me on the substantial risk of serious harm. Early on in your argument, I think you were about to tell us or attempt to define the right. That issue here. So how would you define that right? And why don't you think, once you define it, why don't you think that that right was clearly established? So, here Your Honor, the right involves whether or not he was actually buckled in. Here, he was not. So does it violate clearly established rights for an inmate not to be buckled in and for the driver to travel faster than the speed limit or cross over the yellow white lines? Whatever those mean. The problem here is, Your Honor. You stop there. Of course, your opponents say that in addition to that, as the van was traveling along these curvy roads at an excessive rate of speed in question as to exactly how much over the speed limit that your client was alleged to be looking back to the prisoner in this case was seeing him being jostled back and forth along the wall of the van, saw that he might be getting hurt and nonetheless ignored that risk and continued to drive. Does that change? Does that make it more obvious that that is something that a prison guard shouldn't do? Well, I think that goes to the extent you consider those for the purpose of intent. I don't think you can. I'm just talking about what he or she is seeing. She's seeing this prisoner being jostled around the back of the van unbuckled because a guard chose not to buckle the prisoner and takes no steps to reduce the risk of harm in that case. Why isn't that clearly established that a prison guard can't do that? So that you're essentially immune from threats, if you will, combined with the activities that we just described. I'm not even going to talk about the threats. I'm just talking about what happened, the allegation anyway because obviously this case, if it goes to trial, the jury will have to sort it out. But the petitioner's allegations, why, if those allegations are credited, why isn't it clearly established that a prison guard can't ignore that risk? Your Honor, if I may respond to that. I think the other side has conceded that there's no law on this point and so it really goes to whether it's an obvious violation. I think the risk is that the deliberate indifference claim would just be collapsed into the qualified immunity analysis. This is a special problem that this Court has identified before. I think in the Hope v. Peltzer case from the United States Supreme Court in 2002, it involved an inmate who was shackled to a hitching post with his arms above his shoulder with handcuffs cutting into his hands in the hot sun. And they took the analysis separately. They said, we're going to analyze this for deliberate indifference. Yes, there's a violation. But now we're going to do a separate analysis of whether there's qualified immunity. And they decided that there wasn't. But that case, I think, speaks to the need to keep those analyses different. And the risk is that if the evidence that is marshaled in favor of showing a deliberate indifference claim is all that's needed to defeat qualified immunity, then Harlow doesn't really have a meaning in this context. And all these things are going to trial, even if the allegation is simply, I was unbuckled, I was traveling at a greater than the posted speed limit. And I think that's the concern here. When you define the right, I think you have to define it pretty narrowly in that context with the facts that we have here. And the facts just weren't well developed even though we had discovery to show that this was a clearly established right that's so obvious. What do you think deliberate indifference means? Deliberate indifference is knowing of a substantial risk of serious harm. And what? And ignoring it. Right. Your Honor, I don't... What I would say, Your Honor, if I may indulge your time a little bit more. What I would say is we don't dispute that there may have been deliberate indifference on the second prong. On the first prong of substantial risk of serious harm, we do think that there is a threshold of seriousness to the harm or of the substantial risk. I take it Your Honors don't agree with me. But when you get to the qualified immunity analysis, it's a different analysis and you take the intent out of it. Qualified immunity on an Eighth Amendment claim, you say we take what out of it? Intent. You take deliberate out of it? How are you going to take deliberate out of it when that's the nature of an Eighth Amendment claim? Well, if that were... This is not a Fourth Amendment claim, this is an Eighth Amendment claim. So deliberate is a part of it, is it not? I would refer Your Honor again to... It's a deliberate indifference. So wait a minute, you get qualified immunity defense and you take deliberate out. So what would be left? What would be left? Mr. Thompson sitting in the van, unbuckled, with the driving conduct as alleged. Oh, so that would mean that if you... Deliberate indifference cases, a lot of times we get them in medical cases. So you have... They performed surgery on his kidney. But you did ignore the fact that all the evidence was that it was another organ involved. And they said, we don't care what that was, we're going to do it on the kidney. So then you would even... Or you just look at what they operated on. You forget about the fact that there's a whole medical record that's totally inconsistent and they've been indifferent to that. And we look at that for qualified immunity? In a silo? You got a case that says that? I would think that there... No, to answer your immediate question. But I think there's probably case law on point showing that it's a clearly established right that a doctor cannot... Well, I don't even want to... I don't want to speculate about what the law is on that. Very different hypothetical. What do you think the clean-up argument for your position would be? Because you say you don't dispute that deliberate indifference would exist with the second problem. The second problem of the deliberate indifference analysis meaning the drawing facts. Back up what the trial court essentially assumed. And so if it's an assumption, and you've got the disputed fact part about it that he assumes, and it seems to me you should be arguing send it back to the trial court to decide that first issue. And then you can make that argument. And I'm not sure you're foreclosing now from doing it if it comes up as a disputed fact. Because the facts will determine whether that exists or does not exist. But what's before us now is a trial court that has assumed the first problem. Whether he says it's disputed or not. He could have left the disputed part off. That's done all the time. You assume the first one's there and didn't reach the second one. You reach the second one and find it. The Supreme Court says you can do it. I've been trying to convince why as a matter of law this is not an 8th amendment. And that's very difficult to do because I think all of us can agree that something is disputed there. And there's been no determination at the trial level on it. And the cleanest thing would have been to say even if it was clearly established it needs to go back to the trial court to make a determination on an 8th amendment as to whether it was a violation. That would save you a lot of time. It would probably guide you more where you want to go with it. Maybe that's where this case is going. It was disputed. We talked about disputed facts. We don't make determinations that are disputed facts. But this court can't affirm on any ground that's evident in the record. I'm just saying that's a clean way in your position where you are to have dealt with this. As I said, when it goes back you still have that opportunity at some point on the trial if it becomes obvious this is not an 8th amendment violation to bring that up. Right? I probably wouldn't be involved at the trial level but I would certainly assume that argument would be made if it were to be sent down. Thank you. Your Honors, and may it please the Court. Kane Day on behalf of the appellant, Paul Thompson. I'd like to make a few brief clarifications of my colleague Ms. Mordecai's comments on the argument in chief before I address Mr. Cox's argument. First, in the question relevant to whether this is a deliberate indifference claim or an excessive force claim, here it was pled as a deliberate indifference claim. We argued it as a deliberate indifference claim and there is sufficient evidence to show taking in the light most favorable to Thompson a deliberate indifference claim on this point as Chief Judge Gregory mentioned in his questioning to Mr. Cox. Continuing on clarifying the point about intent I want to make clear what you just said. Are you telling me there is no excessive force claim being brought by you in this matter? No, Your Honor. That's not what we're saying here. There is sufficient facts and particularly because this is a pro se litigant his pleadings are taken broadly. Pro se in the instance of was he the one who wrote this from the beginning? Yes, Your Honor. In the trial level. And he wrote an informal brief to this Court but the briefing was picked up by the Appellate Litigation Clinic after a request of this Court. So you want this to be an excessive force claim as well, don't you? Yes, Your Honor. It's also an excessive force claim but it doesn't need to be an excessive force claim. It's a little different with excessive force than deliberate indifference. The case law is pretty much stronger on these facts. Yes, Your Honor, but the case law is still equally strong on the deliberate indifference aspect looking to Hope v. Peltzer which was also a deliberate indifference claim. They've been struggling between how to handle those two claims. We even had a case dealing with that. But it's clean if you tell me clearly it's before us. But your initial statement was we pled this, we briefed it on deliberate indifference. You didn't mention the word excessive force at all. I was wondering what are you telling me? But you told me he's pro se which we've had instances where pro se defendant we kind of give a little bit more leeway on it. I apologize. I wouldn't say pro se defendant got this wrong but if I had to make a guess, I'd say he looked at a certain case and tracked that complaint with deliberate indifference. But go ahead. I just wanted to clarify my comments that if this court wants to reach the question of whether this was a deliberate indifference or excessive force we win on both of those prongs because we have pled enough for a deliberate indifference claim. So I apologize for making my comments a bit too conclusory and not clear in my position. But continuing on to my second clarification addressing the intent relevance under Harlow and prong two. Harlow discussed bare allegations of intent. Here, as Chief Judge Gregory mentioned, all Eighth Amendment claims would be out on the qualified immunity inquiry if intent were relevant. This is intent with regard to establishing the first prong. Yes, Your Honor. And once you have that first prong, the picture of The trial court didn't determine the first prong. He assumed it. Yes, Your Honor. The trial court found that they were tribal issues of fact and that's what this court looks to at this stage of summary judgment. So unless what we would do is send it back. Yes, Your Honor. This case would go back down to the trial court so Thompson would have his day in court to make his allegations and the decisions of credibility would be added. Why didn't you talk about intent? We need to talk about intent here because it defines well, not at the second stage of the prong of the qualified immunity inquiry if that's the point. We don't have to talk about the intent here necessarily. We have to talk about whether the pled taken the facts in the light most favorable represent a clearly established Eighth Amendment violation. And I think that question and that answer gets to the heart of the case here. The issue is what are the facts in the light most favorable? And the facts in the light most favorable are that Thompson was removed from his prison cell. He was shackled in hand shackles in a black box which affixed his hands in a parallel position. Leg irons. He was placed in the back of a transport van, intentionally unseat belted in the second row of a prison van where he couldn't prop himself up against the front seat or hold against anything. Then he was recklessly driven with the intent to harm him around the sharp curves and at excessive speeds, causing him to be actually thrown around the back of the van, resulting in a gash in his forehead, bruising on his upper shoulders and neck area. Yes, Your Honor. That's the box that we're in, in the clearly established prong is whether it was an obvious violation. You just included evidence of intent in that analysis with respect to qualified immunity and as I understand your opponent's position is we don't look at the intent of the actor in this case. Yes, Your Honor. My time is out. May I have leave to answer the question? Yes, go ahead. Sure. And there are two different types of intent and that's where I believe the confusion is coming about here. There are bare allegations of intent that aren't relevant to the clearly established at all. Just the fact that the officers disliked him in a general matter would not be relevant as intent and that's what Harlow addressed. However, the Eighth Amendment inquiry has by its nature an intent prong so we have to consider the facts in the light most favorable to him and consider that intent as an aspect of the Eighth Amendment prong whether the specific allegations of an Eighth Amendment violation represent clearly established law. And if Your Honors have no further questions, we'd ask that this Court reverse. Thank you. And again, note the clinical court opponent. We appreciate your fine efforts there and certainly the students and acquitted themselves very well for the cavaliers today and thank you for your help. And also we represent, the council representing the Commonwealth as well. Thank you.
judges: Roger L. Gregory, James A. Wynn Jr., Albert Diaz